Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII
**OA DJ2025-063C**

| | | |
|---|---|---|
| JAVIER RAFAEL TORRES AVILÉS, SONIA LÓPEZ HENRRICY Y SU SOCIEDAD LEGAL DE BIENES GANANCIALES Y MARGARET MARIE TORRES LÓPEZ<br><br>RECURRIDOS<br><br>V.<br><br>DOCTORS' CENTER HOSPITAL CAROLINA LLC, ET AL.<br><br><br>**DR. ISMAEL DÍAZ DÁVILA, ET AL.**<br><br>PETICIONARIO | TA2026CE00695 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm. CA2025CV02289<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez, Pagán Ocasio, la Jueza Álvarez Esnard y el Juez Cruz Hiraldo.

Pagán Ocasio, juez ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 26 de junio de 2026.

**I.**

El 30 de mayo de 2026, el Dr. Ismael Diaz Dávila y su aseguradora Puerto Rico Medical Defense Insurance Company (conjuntamente parte peticionaria) presentaron, un recurso de *Certiorari,* en el que nos solicitaron que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI o foro primario), el 10 de abril de 2026, notificada y archivada digitalmente en autos ese mismo día.[1] Mediante dicho dictamen, el foro primario declaró No Ha Lugar la solicitud de

---

[1] Véase entrada núm. 125 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI).

desestimación y/o sentencia sumaria presentada por la parte peticionaria.

El 2 junio de 2026, emitimos una *Resolución* en la cual le concedimos al Sr. Javier Rafael Torres Avilés (recurrido) hasta el 9 de junio para exponer su posición acerca de los méritos del recurso.[2]

El 8 de junio de 2026, el recurrido presentó su *Oposición a Expedición de Auto de Certiorari* en el que nos solicitó que deneguemos la expedición del recurso.[3]

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales pertinentes para su atención.

**II.**

El caso de marras tuvo su génesis el 14 de julio de 2025, cuando la parte recurrida presentó una demanda sobre daños y perjuicios e impericia médica en contra del peticionario y otros.[4] En la misma, alegó que el 10 de abril de 2023, el Sr Javier Torres, se personó al Doctors's Center Hospital Carolina LLC (DCHC). tras un fuerte dolor en el pie izquierdo, allí, fue atendido de manera negligente; no recibió el tratamiento médico adecuado, y fue dado de alta de forma contraria a la mejor práctica de la medicina. El Sr. Torres alegadamente fue instruido a continuar con el tratamiento de antibióticos y consultar a su médico primario una vez completado dicho tratamiento.

Según la demanda, el Sr. Torres consultó a dos médicos adicionales, la Dra. Rina Torres y la Dra. Evelyn Matta, esta última refirió al Sr. Javier Torres a la sala de emergencia del Hospital

---

[2] Véase entrada núm. 2 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).

[3] Íd., entrada núm. 3.

[4] Véase entrada núm. 1 del expediente digital del caso en el SUMAC-TPI. Del expediente surge que, antes de presentar la presente acción, la parte demandante había incoado una demanda anterior, CA2024CV01080, el 9 de abril de 2024, relacionada con los mismos hechos. El 30 de julio de 2024, el TPI dictó una sentencia en la que acogió la solicitud de desistimiento de la parte recurrida y desestimó la demanda, sin perjuicio.

Auxilio Mutuo para tratamiento. Allí el Sr. Torres fue admitido, evaluado y finalmente operado de la pierna afectada. Alega el Sr. Torres que como consecuencia de la negligencia de los demandados sufrió la perdida de movimiento en el pie, daños en los demás tejidos de la pierna e impedimento físico.

Tras varios trámites procesales, innecesarios pormenorizar, el 5 de enero de 2026 el peticionario presentó una *Moción de Desestimación y/o Sentencia Sumaria.*[5] Arguyó que la causa de acción se encontraba prescrita y en la alternativa, que de la evidencia presentada no surge controversia de los hechos materiales.

El 2 de febrero de 2026, el recurrido presentó *Oposición a Moción de Desestimación y/o Sentencia Sumaria.*[6] En esta, argumentó que se presentó una demanda el 9 de abril de 2024 a los fines de interrumpir los términos prescriptivos y que en dicha demanda se incluyó como co-demandado a *Fulano de Tal* por desconocer su nombre o no contar con los elementos necesarios para conocer que existía una causa de acción en su contra y que se refería al peticionario. Por otra parte, la parte recurrida alegó que no fue hasta la presentación de la demanda de epígrafe, el 14 de julio de 2025, que contó con el insumo de su perito, quien le indicó que el récord médico aparentaba estar incompleto. Añade que no fue hasta el 12 de septiembre de 2025, en una tercera ocasión, que se entregó el récord médico completo.

El 10 de abril de 2026, el TPI emitió una resolución mediante la cual resolvió que, a esa fecha, de los documentos presentados por las partes no se desprendía claramente que la causa de acción estuviera prescrita. Resolvió que del examen del expediente y de la evidencia presentada surge que existen controversias de hechos

---

[5] Íd., entrada núm. 101.
[6] Íd., entrada núm. 113.

materiales en torno al momento en que la parte demandante conoció o debió de conocer la existencia del daño y la identidad del presunto causante, así como en cuanto al cómputo del término prescriptivo aplicable. Por ello, concluyó que era necesaria prueba adicional que reafirmara y fundamentara el recurso solicitado. Asimismo, determinó que la parte promovente no logró demostrar la ausencia de controversia real sobre hechos materiales que permitiera la adjudicación del caso mediante sentencia sumaria.[7]

El 16 de abril de 2026 la peticionaria presentó una *Moción de Reconsideración y Solicitud de Determinación de Hechos Adicionales*. En esta solicitó al tribunal que se emitiera como determinación de hecho que a la fecha del 21 de septiembre de 2023 (primera entrega del récord médico) ya se identificaba el nombre de la parte peticionaria. Por consiguiente, fundamenta su reconsideración en que, en base a este único hecho, la parte recurrida ya conocía o debía conocer del daño y su causante.[8]

El 1 de mayo de 2026 la parte recurrida presentó *Oposición a la Moción de Reconsideración.* [9] En dicha Oposición presentó nuevamente los argumentos utilizados en su Oposición a Moción de Desestimación y/o Sentencia Sumaria y añadió que por tratarse de una resolución y no una sentencia, no procedían las determinaciones adicionales.

El 4 de mayo de 2026 el TPI emitió una *Orden sobre la Moción de Reconsideración,* en la cual, declaró No Ha Lugar la reconsideración presentada.[10]

Inconforme, el recurrido presentó el recurso de *Certiorari* de epígrafe, en el que formuló el siguiente señalamiento de error:

> **PRIMER ERROR: Erró El Tribunal de Primera Instancia, Sala de Carolina, en su aplicación del derecho respecto a prescripción y la teoría**

---

[7] Íd., entrada núm. 125
[8] Íd., entrada núm. 126.
[9] Íd., entrada núm. 128.
[10] Íd., entrada núm. 129

**cognoscitiva del daño al declarar NO HA LUGAR a la solicitud de Desestimación y/o Sentencia Sumaria presentada por el Dr. Ismael Díaz Dávila y PRMD.**

En este, alegó que los hechos que dan base a la reclamación ocurrieron entre el 10 y el 13 de abril de 2023, fecha en la cual Sr. Torres fue atendido en la Sala de Emergencias del Doctors' Center Hospital Carolina y posteriormente dado de alta. Adujo que, desde ese momento, el Sr. Torres tenía conocimiento de haber sufrido un alegado daño, lo que activó el término prescriptivo de un (1) año dispuesto por el Artículo 1204 del Código Civil de Puerto Rico de 2020, 31 LPRA § 9496, para exigir responsabilidad extracontractual.

Por lo cual, arguyó que la demanda presentada el 14 de julio de 2025, se presentó después de transcurrido el término prescriptivo.[11] La parte peticionaria argumenta que no medió interrupción válida del término en cuanto al Dr. Díaz Dávila, ya que la demanda presentada el 9 de abril de 2024 (caso CA2024CV01080) no incluyó a la parte peticionaria como codemandado. Por lo cual, argumenta que la presentación oportuna de una demanda contra un presunto cocausante, no interrumpe el término prescriptivo respecto a los demás alegados cocausantes, quienes deben ser demandados individualmente dentro del término de un año, citando la doctrina de *Fraguada Bonilla v. Hospital Auxilio Mutuo*, 186 DPR 365 (2012).

Por otra parte, alegó que la parte recurrida conocía la identidad del Dr. Díaz Dávila desde antes de que venciera el término prescriptivo, dado que el 21 de septiembre de 2023, el demandante obtuvo copia de su expediente médico del DCHC, documento en el que figuraba expresamente el nombre del Dr. Díaz Dávila como el médico que lo atendió en la Sala de Emergencias.

---

[11] Véase entrada núm. 1 del expediente digital del caso en el SUMAC-TPI.

La parte peticionaria argumenta que, desde el 21 de septiembre de 2023, la parte recurrida tenía información suficiente para identificar al Dr. Díaz Dávila como posible cocausante del daño que alegaba haber sufrido. A pesar de ello, optó por no incluirlo en la demanda del 9 de abril de 2024, y no lo hizo hasta la demanda del 14 de julio de 2025, cuando el término prescriptivo ya había expirado.

De otra parte, arguyó que la teoría cognoscitiva del daño solo aplica en situaciones excepcionales en las que el perjudicado, de buena fe y sin que medie falta de diligencia de su parte, desconoce los elementos necesarios para reclamar. Argumentó que, cuando el desconocimiento se atribuye a la propia inacción del reclamante, no procede extender el término prescriptivo. Por lo cual, alegó que la demanda presentada el 9 de abril de 2024 contra otros codemandados, incluyendo el hospital y otros médicos sin contar todavía con prueba pericial, demuestra que sí era posible ejercitar la acción en esa fecha, cuando ya se conocía la identidad del aquí peticionario.

Por su parte, la parte recurrida presentó su oposición. Arguyó que la teoría cognoscitiva del daño requiere de un trinomio de información, en específico: los elementos necesarios para ejercitar efectivamente la causa de acción. Adujo que, en la entrega del récord médico del 21 de septiembre de 2023, se incluía el nombre del Dr. Díaz Dávila, sin embargo, no fue hasta el 12 de septiembre de 2025 (tercera entrega del récord), en la cual se incluyó el expediente completo. Por lo tanto, alega la parte recurrida que anterior a la tercera entrega del récord no se conocían los elementos para la causa de acción, al estar incompleto el récord médico entregado y no especificarse el carácter ni el tratamiento brindado por cada facultativo médico.

### III.

### A.

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Rivera et. al. v. Arcos Dorados et al.***, 212 DPR 194, 207 (2023); ***Caribbean Orthopedics v. Medshape et al.***, 207 DPR 994, 1004 (2021); ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Es en esencia un recurso extraordinario por el cual se solicita a un tribunal de mayor jerarquía la corrección de un error cometido por el tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, supra, pág. 729. Una característica distintiva del auto de *certiorari* es que se asienta en la discreción delegada al tribunal revisor para autorizar su expedición y adjudicación. ***IG Builders et al. v. BBVAPR***, 185 DPR 307, 338 (2012).

En el ámbito judicial, la discreción del tribunal revisor no debe abstraerse del resto del Derecho y, por lo tanto, es una forma de razonabilidad aplicada al discernimiento judicial para así llegar a una conclusión justiciera. ***Torres González v. Zaragoza Meléndez***, 211 DPR 821, 847 (2023); ***Mun. Caguas v. JRO Construction***, 201 DPR 703, 712 (2019).

Esta discreción judicial para expedir o no el auto de *certiorari* solicitado no ocurre en un vacío ni en ausencia de unos parámetros. ***Torres González v. Zaragoza Meléndez***, supra, pág. 848. Así pues, con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, ***In re Aprob. Enmdas. Reglamento TA***, 2025 TSPR 141, pág. 63, 216 DPR __ (2025), establece los criterios que debemos tomar en

consideración al atender una solicitud de expedición de un auto de *certiorari*.[12]

Reiteradamente, el Tribunal Supremo de Puerto Rico ha expresado que en su misión de hacer justicia la discreción "es el más poderoso instrumento reservado a los jueces". ***Rodríguez v. Pérez***, 161 DPR 637, 651 (2004). La discreción se refiere a "la facultad que tiene [el tribunal] para resolver de una forma u otra, o de escoger entre varios cursos de acción". ***Citibank et al. v. ACBI et al.***, 200 DPR 724, 735 (2018); ***García López y otro v. E.L.A.***, 185 DPR 371 (2012). En ese sentido, ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". ***800 Ponce de Leon. v. AIG***, 205 DPR 163, 174 (2020); ***Citibank et al. v. ACBI et al.***, *supra*; ***Medina Nazario v. McNeil Healthcare LLC***, *supra*, pág. 729. Lo anterior "no significa poder actuar en una forma u otra, haciendo abstracción del resto del Derecho". ***Hietel v. PRTC***, 182 DPR 451, 459 (2011); ***Pueblo v. Rivera Santiago***, 176 DPR 559, 580 (2009); ***Negrón v. Srio. de Justicia***, 154 DPR 79, 91 (2001). Ello, ciertamente, constituiría un abuso de discreción.

En ese sentido, el Tribunal Supremo de Puerto Rico ha establecido que "la discreción que cobija al Tribunal de Primera

---

[12] Esta Regla dispone lo siguiente:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Instancia en sus determinaciones discrecionales es amplia, por lo que sus decisiones merecen gran deferencia". *Citibank et al. v. ACBI et al., supra,* pág. 735. Cónsono con ello, es norma reiterada que este tribunal no intervendrá "con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por dicho foro en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto". *Citibank et al. v. ACBI et al.*, *supra,* pág. 736. Véase, además, *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012).

**B.**

Las regla 10 de procedimiento civil faculta a la parte demandada a presentar una moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V. R.10.2. Este mecanismo procesal permite solicitar la desestimación de una reclamación judicial cuando, de las alegaciones contenidas en la demanda, surge que una defensa afirmativa resulta suficiente para derrotar la causa de acción de la parte demandante. *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 78 (2023), *Costas Elena v. Magic Sport Culinary Corp*, 213 DPR 523, 533 (2024). En lo específico la Regla 10.2 de Procedimiento Civil, *supra,* por los fundamentos siguientes: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; **(5) dejar de exponer una reclamación que justifique la concesión de un remedio, y** (6) dejar de acumular una parte indispensable (énfasis nuestro).

Nuestro más alto foro ha reiterado que en la desestimación fundamentada bajo la Regla 10.2 (5), *supra,* "los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y

concluyente". ***Eagle Security v. Efrón Dorado et al.***, supra, pág. 78; ***Cobra Acquisitions v. 534 Mun. de Yabucoa et al.***, 210 DPR 384, 396 (2022); ***Rivera Candela v. Universal Insurance Company***, 214 DPR 1007 (2024). Posteriormente, el tribunal debe determinar si, sobre la base de los hechos aceptados como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. Para ello, corresponde evaluar las alegaciones en conjunto, desde la perspectiva más favorable a la parte demandante y con toda duda resuelta a favor de esta, a fin de determinar si la demanda es suficiente para configurar una reclamación válida, ***Rivera Candela v. Universal Insurance***, supra, pág 1024.

En consecuencia, para que un demandado prevalezca mediante una moción de desestimación al amparo de la Regla 10.2(5), *supra*, debe demostrar con absoluta certeza que la parte demandante no tiene derecho a remedio alguno bajo ningún supuesto de derecho que pudiera probarse en apoyo de su reclamación, incluso al interpretar la demanda de la manera más liberal posible a favor de dicha parte, ***Casillas Carrasquillo v. ELA***, 209 DPR 240, 247 (2022).

### C.

La prescripción extintiva es el mecanismo mediante el cual, se extingue el derecho a ejercer una causa de acción, como consecuencia de la inacción de su titular durante el término fijado por ley. De este modo, las acciones prescriben por el solo transcurso del tiempo, excepto cuando media un acto interruptor válido y reconocido por el ordenamiento jurídico ***Nevarez Agosto v. United Surety & Indemnity Company***, 209 DPR 346, 356 (2022); ***Xerox Corporation v. Gomez Rodriguez***, 201 DPR 945, 952 (2019).

La figura de la prescripción extintiva se rige por los principios del Código Civil ***Fraguada Bonilla v. Hosp. Aux. Mutuo***, 186 DPR

365 (2012). En lo particular el término prescriptivo según en el ámbito de responsabilidad civil extra contractual es de un (1) año. Art 1204 del Código Civil de 2020, 31 LPRA § 9496. Por tanto, como regla general, una reclamación de daños y perjuicios de naturaleza extracontractual debe ejercitarse dentro del término de un año, contando desde el momento en que la causa de acción puede ejercitarse conforme a derecho.

Ahora bien, nuestro ordenamiento jurídico reconoce tres mecanismos que interrumpen la prescripción, (1) el ejercicio de la acción ante los tribunales; (2) la reclamación extrajudicial, y (3) cualquier acto de reconocimiento de la obligación que haga el deudor, Art 1197 del Código Civil de 2020, *supra; **Nevarez Agosto v. United Surety & Indemnity Company**,* 209 DPR 346, 357 (2022). La interrupción tiene el efecto de detener el curso del término prescriptivo,

En cuanto al momento en que comienza a transcurrir el término prescriptivo, nuestro ordenamiento ha reconocido la teoría cognoscitiva del daño. Bajo esta doctrina, el término prescriptivo comienza a computarse cuando el reclamante conoció o debió conocer que sufrió un daño, quién se lo causó y los elementos necesarios para poder ejercitar efectivamente su causa de acción. Por consiguiente, el punto de partida no es necesariamente la fecha exacta en que ocurrió el evento que ocasionó el daño, sino el momento en que la persona perjudicada tuvo, o debió tener mediante el ejercicio de razonable diligencia, conocimiento suficiente del daño y de su posible autor para poder ejercer la reclamación. ***Fraguada Bonilla v. Hosp. Aux. Mutuo**,* supra; ***Maldonado Rivera v. Suarez**,* 195 DPR 182, 186 (2016). La interrupción del término prescriptivo, en acciones de responsabilidad extracontractual, debe realizarse de forma individual respecto a cada cocausante. No obstante, la aplicación de

dicha norma depende, de la determinación de hechos relacionados al conocimiento del daño y de la identidad del causante.

**D.**

En nuestro ordenamiento civil la Regla 36 de Procedimiento Civil de 2009, *supra* regula todo lo concenrniente con la sentencia sumaria. La sentencia sumaria es el mecanismo procesal que busca "una solución rápida, justa y económica en los casos de naturaleza civil en los que no existan hechos materiales en controversia". ***Soto y otros v. Sky* Caterers**, 2025 TSPR 3, 215 DPR ____ (2025); ***Cruz Cruz v. Casa Bella Corp.***, 213 DPR 980, 993 (2024); ***Batista Valentin v. Batista Valentin***, 2025 TSPR 93, 4 DPR___(2025).

Los hechos materiales son aquellos que pueden alterar la forma en que se resuelve una reclamación, conforme al derecho sustantivo aplicable. ***Cruz Cruz v. Casa Bella Corp***, supra*; Zambrana García v. ELA et al.*, 204 DPR 328, 341 (2020). Por lo tanto, de no haber hechos materiales en controversia, el tribunal dictará sentencia sumaria siempre que proceda en derecho. Por otra parte, quien se opone a la sentencia sumaria deberá refutar con prueba sustancial los hechos materiales que entiende que están en conflicto, ***Birriel Colon v. Supermercado Los Colobos*** 213 DPR. 80, 90-91 (2023).

En lo particular la Regla 36.3(e), *supra* dispone que un tribunal dictará sentencia sumariamente "si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente".

Los foros apelativos nos encontramos en la misma posición que los foros de primera instancia al evaluar la procedencia de una sentencia sumaria. ***Soto y otros v. Sky* Caterers**, *supra.* Sin embargo, nuestra función se limita a: (1) considerar los documentos

que se presentaron ante el foro de primera instancia; (2) determinar si existe alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. *Segarra Rivera v. International Shipping Agency, Inc.,* 208 DPR. 964, 981, (2022). *Birriel Colon v. Supermercado Los Colobos, supra.* Por consiguiente el tribunal revisor viene obligado a revisar el expediente nuevamente y considerar la prueba en la manera más favorable a la parte que se opone a la moción de sentencia sumaria.

**IV.**

En el presente caso, la parte peticionaria sostiene que el TPI erró al aplicar la teoría cognoscitiva del daño al considerar el término prescriptivo de la acción y en consecuencia declarar No Ha Lugar a la solicitud de Desestimación y/o Sentencia Sumaria.

Por el contrario, la parte recurrida sostiene que la resolución emitida por el foro primario es correcta. Alega que existen controversias de hechos materiales y que el TPI actuó correctamente al aplicar la teoría cognoscitiva del daño, en lugar de limitarse a la mera identidad de nombre, para determinar el inicio del término prescriptivo, luego de considerar los elementos necesarios para establecer la causa de acción. Argumenta que el expediente médico le fue entregado, en dos (2) ocasiones, de forma incompleta. Del mismo no se desprendían los elementos necesarios para identificar los co-causantes del daño ni en qué consistió su negligencia. Por lo cual, la causa de acción no puede estar prescrita.

Tras un análisis objetivo, sereno y cuidadoso del expediente y de la petición de *certiorari*, y a la luz de los criterios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos que debemos abstenernos de ejercer nuestra función revisora discrecional y rechazar intervenir con la determinación del

TPI. No estamos adjudicando los méritos de la controversia, en esta etapa de los procedimientos.

## V.

Por los fundamentos pormenorizados, se deniega la expedición del auto de *certiorari*.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones